FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 2 2 2006

JAMES N. HATTEN, CLERK
By _____
       Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SCQuARE INTERNATIONAL, LTD.,

        Plaintiff,

v.

BBDO ATLANTA, INC.,

        Defendant.

CIVIL ACTION NO.

1:04-CV-0641-JEC

## O R D E R   &   O P I N I O N

This case is presently before the Court on defendant's Renewed Motion for Summary Judgment [65], plaintiff's Motion for Summary Judgment on Infringement and Breach of Contract Claims [67], and plaintiff's Motion to Dismiss or for Summary Judgment on Defendant's Counterclaims [68].   The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Renewed Motion for Summary Judgment [65] should be **GRANTED in part** and **DENIED in part**, plaintiff's Motion for Summary Judgment on Infringement and Breach of Contract Claims [67] should be **GRANTED in part** and **DENIED in part**, and plaintiff's Motion to Dismiss or for Summary Judgment on Defendant's Counterclaims [68] should be **DENIED**.

**BACKGROUND**

Plaintiff SCQuARE International Limited ("SCQuARE") is a U.K. company that operates training programs to teach problem solving and communication skills. (Pl.'s Statement of Material Facts ("PSMF") [67] at ¶ 1.)  SCQuARE is named after the mnemonic the company created to teach its program. (*Id.* at ¶ 2.)  Each letter of the mnemonic coincides with a step in the SCQuARE program to identify, analyze, and solve business problems. (*Id.*)

Plaintiff has developed materials that it uses to teach the SCQuARE program, including a training manual titled *SCQuARE Total Business Thinking Programme Manual* (the "SCQuARE Manual"). (PSMF [67] at ¶ 3.)  Plaintiff has registered the SCQuARE Manual with the Copyright Office, and owns registration No. TX 5-927-792, which covers the Manual.[1] (*Id.*)

Defendant BBDO Atlanta is an advertising and marketing agency. (Def.'s Statement of Material Facts ("DSMF")[48] at ¶ 1.)  In the fall of 1999, defendant hired plaintiff to train sixteen of defendant's mid- and upper-level employees in the SCQuARE method. (PSMF [67] at ¶ 4; DSMF at ¶ 4.)  The training was well-received, and defendant hired plaintiff to conduct additional SCQuARE training classes between 1999 and 2000. (PSMF at ¶ 5.)  Ross Lovelock, the

---

[1] Plaintiff has created several versions of the SCQuARE Manual. (PSMF at ¶ 3.)  Version six is at issue in this case. (*Id.*)

2

creator of SCQuARE, conducted the classes.  (*Id.*)  Richard Bell, a BBDO consultant and former director of SCQuARE's U.S. operations, assisted Lovelock.  (*Id.* at ¶¶ 5-7.)  The training consisted of six hours of lecture on the basics of the SCQuARE concept and two additional days of group training.  (*Id.* at ¶ 9.)  Each person at the training received a copy of the SCQuARE Manual.  (*Id.* at ¶ 10.)

At some point during the ongoing training, plaintiff sent defendant a contract relating to the SCQuARE program.  (DSMF [48] at ¶ 33.)  The contract contained a Copyright section, which provided:

> All rights are reserved.  All the SCQuARE course materials, the concept, logos, know-how and the mnemonic are the copyright of Magnolia House[2] and SCQuARE International Ltd., and may not be reproduced, stored, communicated, taught or transmitted in any form, or by any means, electronically, mechanically or otherwise, in whole or in part, without the prior written permission of the copyright holder.  Client Companies and delegates agree not to copy such materials and the Client Company is responsible for ensuring that delegates are aware of the rights vested in these items.

(*Id.* at ¶ 34; PSMF [67] at ¶ 19.) Debbie Lindner, defendant's director of Human Resources, signed and returned the contract on March 10, 2000.  (*Id.*)

Plaintiff conducted its last training program for defendant in April, 2000.  (DSMF [48] at ¶ 18.)  After plaintiff completed its training sessions, defendant engaged in at least three actions that

---

[2] Magnolia House is a wholly owned shell corporation of SCQuARE International Limited.  (PSMF [67] at ¶ 19.)

plaintiff claims breached the parties' contract and infringed plaintiff's copyright in the SCQuARE training manual. (PSMF [67] at ¶¶ 6, 10-15; DSMF at ¶¶ 18-32.)

First, Richard Bell conducted a follow-up SCQuARE course for defendant's employees in November, 2000. (PSMF [67] at ¶ 7; DSMF [48] at ¶¶ 18-24.) The parties dispute whether the course was a "refresher" class or a class for new employees. (PSMF at ¶ 7; DSMF at ¶ 18.) Regardless, plaintiff contends that the course was unauthorized. (Compl. [1] at ¶ 18.) Plaintiff also suggests that defendant coerced Bell into giving the presentation, by offering to pay him $4,000 to provide the training shortly after informing him that he was being laid off from BBDO. (Pl.'s Resp. to DSMF [54] at ¶ 20-22; Pl.'s Resp. to Def.'s Mot. for Summ. J. [51] at Ex. 22.)

Then, in February, 2003, BBDO Executive Vice President and Strategy Director, Jeff Upshaw, created a Power Point presentation titled *SCQuARE and the Continuous Promise*. (PSMF [67] at ¶ 13.) Upshaw presented *SCQuARE and the Continuous Promise* to a group of new employees, at an orientation designed to familiarize new hires with SCQuARE and another theory utilized by defendant in its business, "The Continuous Promise." (DSMF [48] at ¶ 29.) Plaintiff contends that defendant copied several of the slides in this presentation directly from the SCQuARE manual, violating the parties' contract and infringing plaintiff's copyrights in the SCQuARE Manual. (PSMF at ¶

4

13.)

Later in 2003, defendant implemented a new client relations program titled 10/10. In conjunction with this program, BBDO Senior Vice President Pat Moslow created *SCQuARE for Dummies*, a condensed version of the SCQuARE Manual. (PSMF [67] at ¶ 14; DSMF [48] at ¶ 27.) According to defendant, *SCQuARE for Dummies* was intended to familiarize untrained employees with the SCQuARE method, so that employees could then apply the method to their implementation of the 10/10 program. (DSMF at ¶ 27.) Defendant printed and distributed at least 20 copies of *SCQuARE for Dummies* at the 10/10 training session.[3] (*Id.*) Plaintiff claims that *SCQuARE for Dummies,* which contains verbatim excerpts from the SCQuARE Manual, further breached the parties' contract and violated copyright law. (PSMF [67] at ¶ 11.)

In the fall of 2003, Richard Bell met another former BBDO employee, Ben Mack, at a company where Bell and Mack were both working. (PSMF [67] at ¶ 17.) Mack, who associated Bell's name with the SCQuARE program, informed Bell that defendant was teaching SCQuARE internally, and provided Bell with a copy of the *SCQuARE for Dummies* manual. (*Id.*) Bell sent a copy of the manual to SCQuARE, notified Lovelock of defendant's internal teaching, and confessed

---

[3] Plaintiff contends that defendant distributed over 30 copies of *SCQuARE for Dummies* and used the manual in two additional training sessions, including a meeting of junior account executives. (Pl.'s Response to DSMF [54] at ¶ 27; PSMF [67] at ¶ 16.)

that he had also taught SCQuARE internally while employed by defendant. (*Id.* at ¶ 18.)

Plaintiff subsequently filed the present action for breach of contract and copyright infringement. (Compl. [1].) Plaintiff also asserted claims for trademark infringement, unfair competition, violation of Georgia's Deceptive Trade Practices Act, violation of Georgia's Computer Systems Protection Act, Punitive Damages, and attorney's fees and litigation expenses under the Copyright Act and O.C.G.A. § 13-6-11. (*Id.*)

During its initial investigation into the case, defendant discovered that plaintiff had used BBDO's name and a favorable employee quote on the SCQuARE website. (Counterclaim [59] at 17.) Shortly thereafter, defendant filed counterclaims against plaintiff for false endorsement and unjust enrichment, based on plaintiff's unauthorized use of the BBDO name. (*Id.* at 18-19.)

Both parties have filed motions, which are presently before the Court. Defendant has filed a motion for summary judgment on all of plaintiff's claims. (Def.'s Mot. for Summ. J. [65].) Plaintiff has filed a motion for summary judgment on its breach of contract and copyright infringement claims. (Pl.'s Mot. for Summ. J. [67].) Plaintiff has also filed a motion for summary judgment on defendant's counterclaims. (Pl.'s Mot. for Summ. J. [68].)

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c).  A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

7

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## II.  **Plaintiff's Motion for Summary Judgment on Infringement and Breach of Contract Claims**

### A.    **Breach of Contract**

Plaintiff has asserted a claim for breach of contract under Georgia law.[4] (Compl. [1] at ¶¶ 60-62.) Defendant concedes that the

---

[4] The essential elements of a contract under Georgia law are: 1) parties able to contract; 2) consideration moving to the contract; 3) a subject matter upon which the contract can operate; and 4) the

8

parties had a valid contract. (Def.'s Br. [48] at 19.) The language of that contract prohibited defendant from, among other things, "reproducing" or "copying" the SCQuARE course materials without plaintiff's prior written permission. (Pl.'s Mot. for Summ. J. [67] at Ex. 6.) It is clear from the record that *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* reproduce portions of the SCQuARE Manual. (*Id.* at Exs. 1, 13, and 16.) Defendant's employees who created *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* admit that they did so by directly copying text and graphics from the SCQuARE Manual. (Moslow Dep. at 19-23, 25-27; Upshaw Dep. at 29-30, 35-37.) The undisputed facts in the record thus establish that defendant breached the parties' contract.

Contrary to defendant's argument, Ross Lovelock's testimony does not suggest otherwise. (Def.'s Br. [73] at 18-20.) As noted, Ross Lovelock is the creator of SCQuARE. (DSMF [48] at ¶ 2.) According to defendant, certain "concessions" in Lovelock's deposition testimony demonstrate that defendant's use of the SCQuARE materials, including its creation of *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise*, was authorized and within the parties' understanding of the terms of the contract. (Def.'s Br. [73] at 18-

---

assent of the parties to the terms of the contract. O.C.G.A. § 13-3-1; *TranSouth Fin. Corp. v. Rooks,* 269 Ga. App. 321, 323, 604 S.E. 2d 562, 563 (2004).

20.)  Even the excerpt of Lovelock's testimony cited in defendant's statement of facts belies this argument.  In his testimony, Lovelock acknowledges that he expected defendant to apply the SCQuARE materials to its business problems, but he emphatically objects to defendant's copying--or reproducing--those materials in their own works.  In the portion of Lovelock's deposition that defendant cites, he states, at least twice:  "What you cannot do . . . is reproduce[] [our] material."  (DSMF [48] at ¶ 39.)

Defendant's attempt to define "reproduce" or "copy" to require the use of a copier or photocopy machine is similarly unpersuasive. (Def.'s Br. [48] at 19.)  Defendant's definition would nullify additional language in the contract, which prohibits reproduction "by any means."  (Pl.'s Mot. for Summ. J. [67] at Ex. 6.)  *See Town Projects LLC v. Marquis Tower, Inc.,* 267 Ga. App. 164, 166, 598 S.E. 2d 883, 885 (2004) (avoiding "any construction that renders portions of the contract language meaningless") (citing *Deep Six, Inc. v. Abernathy,* 246 Ga. App. 71, 74, 538 S.E. 2d 886 (2000)).  Defendant's employees admit that they created *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* by directly copying text and graphics from the SCQuARE Manual.  Their actions thus fall within the contractual definition and the ordinary meaning of the words "reproduce" and "copy."

The Court agrees with defendant that ambiguities in a contract

10

must be construed against the drafter. (Def.'s Br. [48] at 20.)   In

this case, however, the relevant terms of the contract are not

ambiguous.     The  plain  language  of  the  contract  prohibits

"reproducing" or "copying" the SCQuARE materials "by any means."

(Pl.'s Mot. for Summ. J. [67] at Ex. 6.)  Defendant's employees admit

that they reproduced portions of the SCQuARE Manual when they created

*SCQuARE for Dummies* and *SCQuARE and the Continuous Promise*.   (Moslow

Dep. at 19-23, 25-27; Upshaw Dep. at 29-30, 35-37.)  Comparing these

works  to  the  SCQuARE  Manual,  no  rational  jury  could  conclude

otherwise:     *SCQuARE  for  Dummies*  and  *SCQuARE  and  the  Continuous*

*Promise* both contain numerous verbatim quotes and graphics taken

directly  from  the  SCQuARE  Manual.     *See  Amstadter  v.  Liberty*

*Healthcare  Corp.*,  233  Ga.  App.  240,  242,  503  S.E.  2d  877,  880

(1998)("In   summary   judgments   involving   contract   cases,   the

construction of a contract is a question of law for the trial court

'where  the  language  of  a  contract  is  clear  and  unambiguous  and

capable of only one reasonable interpretation as applied to the

subject matter.'") (quoting *Nolley v. Maryland Cas. Ins. Co.*, 222 Ga.

App. 901, 903(3), 476 S.E. 2d 622 (1996)), and *White v. Kaminsky*, 271

Ga.  App.  719,  721,  610  S.E.  2d  542,  544  (2004)(noting  that  if

contract  language  is  clear  and  unambiguous,  "the  court  simply

enforces the contract according to its clear terms").  Accordingly,

plaintiff's motion for summary judgment on its breach of contract

claim is **GRANTED**.

### B.    Copyright Infringement

Plaintiff argues that defendant's admitted creation and distribution of *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* also compel summary judgment on plaintiff's copyright infringement claim. (Pl.'s Br. in Support of its Mot. for Summ. J. (Pl.'s Br.") [67] at 9-17.) Plaintiff makes a very strong argument in favor of summary judgment. At the present time, the Court **DENIES** plaintiff's motion, but the Court may revisit at trial plaintiff's contention that it is entitled to judgment as a matter of law.

The Copyright Act gives the owner of a copyrighted work the exclusive right to "reproduce the work" and "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(1),(2). In order to prevail on its claim for infringement of its rights under the Act, plaintiff must demonstrate:  1) that it owns a valid copyright in the SCQuARE Manual; and 2) that defendant copied original elements of the SCQuARE Manual in *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise*. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1266 (11th Cir. 2001).

The first element, plaintiff's ownership of a valid copyright in the SCQuARE Manual, is not in dispute. Plaintiff has submitted its Copyright registration certificate for the SCQuARE Manual. (Pl.'s Mot. for Summ. J. [67] at Ex. 1.) The certificate creates a

presumption as to the validity of plaintiff's copyright. *Donald Frederick Evans & Assoc., Inc. v. Cont'l Homes, Inc.,* 785 F.2d 897, 903 (11th Cir. 1986).

As to the second element, plaintiff contends that there is no dispute that defendant copied the SCQuARE manual because the record contains direct evidence of copying. (Pl.'s Br. [67] at 9-15.)  As noted, defendant's employees admit that they copied portions of the SCQuARE Manual when they created *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise*. (Moslow Dep. at 19-23, 25-27; Upshaw Dep. at 29-30, 35-37.)  These admissions, however, do not in and of themselves conclusively establish copyright infringement.  Moreover, and contrary to plaintiff's argument, direct evidence of copying does not dispense with the requirement of showing that the allegedly infringing works are "substantially similar" to the copyrighted SCQuARE Manual. (Pl.'s Br. [67] at 16.)

The copying element of plaintiff's infringement claim involves two separate inquiries: 1) whether defendant, as a factual matter, copied plaintiff's Manual in creating its own works; and 2) whether those elements of the Manual that defendant copied are protected expression, and of such importance to the copied work that defendant's appropriation is actionable. *MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.,* 89 F.3d 1548, 1554 (11th Cir. 1996) (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th

13

Cir. 1993)).  The "substantial similarity" concept is relevant to both inquiries.  *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1214 (11th Cir. 2000).

With regard to the factual matter of copying, ordinarily only circumstantial evidence is available.  *Donald Frederick Evans & Assoc.,* 785 F.2d at 904 (citing *Ferguson v. Nat'l Broad. Co.,* 584 F.2d 111, 113 (5th Cir. 1978)).  Consequently, courts have allowed plaintiffs to raise an inference of copying by showing that defendant had access to the copyrighted work, and that the allegedly infringing work is "substantially similar."  *Id.*  *See also, Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1541 (11th Cir. 1996) ("'[c]opying as a factual matter typically may be inferred from proof of access to the copyrighted work and 'probative similarity'") (quoting *Eng'g Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1340 (5th Cir. 1994)).  Direct evidence of copying establishes, as a factual matter, that "the alleged infringer 'actually used the copyrighted material to create his own work.'"  *Bateman,* 79 F.3d at 1541.  *Id.* In this sense, plaintiff's argument that it is not required to show "substantial similarity" is correct.

To prevail on its infringement claim, however, plaintiff must also demonstrate that those elements of the SCQuARE Manual that defendant copied are "protected expression . . . of such importance to the [Manual] that defendant's appropriation is actionable."  *MiTek*

14

*Holdings,* 89 F.3d at 1554; *Leigh,* 212 F.3d at 1214 ("Even in the rare case of a plaintiff with direct evidence that a defendant attempted to appropriate his original expression, there is no infringement unless the defendant succeeded to a meaningful degree.")(citing *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1248, 1257 (11th Cir. 1999)).  This inquiry likewise requires a comparison of the works to determine whether they are "substantially similar." *Leigh,* 212 F.3d at 1214.  "Substantial similarity" in this sense is generally a question of fact for the jury. *Id.* at 1216. *See also, Donald Frederick Evans,* 785 F.2d at 904 (noting that substantial similarity is usually a question of fact), and *Twin Peaks Prod., Inc. v. Publ'n Int'l, Ltd.,* 996 F.2d 1366, 1372 (2d Cir. 1993) ("the trier of fact must determine whether the similarities are sufficient to qualify as substantial").  Summary judgment is only appropriate if it is so clear that the works are substantially similar that no reasonable jury could find otherwise. *Leigh,* 212 F.3d at 1216.

The Court has compared the works and finds that this is a close question, especially with respect to *SCQuARE for Dummies,* which quotes directly from the SCQuARE Manual and incorporates exact replicas of original graphics and templates that appear in the SCQuARE Manual. (*See* Pl.'s Mot. for Summ. J. [67] at Exs. 1, 13, and 16.)  Defendant argues that there is some question whether defendant's works, as a whole, are substantially similar to

15

plaintiff's copyrighted SCQuARE Manual, particularly as *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* are both so abbreviated.  As there will be a trial on other claims, the Court will likewise allow this claim to proceed to trial.  As noted, however, the Court may revisit its decision not to grant plaintiff a judgment, outright, at the conclusion of plaintiff's case. Accordingly, plaintiff's motion for summary judgment on its copyright infringement claim is **DENIED**.

## III.  Defendant's Motion for Summary Judgment

### A.    Copyright Infringement

Although questions of fact remain concerning substantial similarity, it is clear from the record that *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* incorporate fairly substantial portions of the copyrighted SCQuARE Manual. (Pl.'s Mot. for Summ. J. [67] at Exs. 1, 13, and 16.)  There is also an argument that *SCQuARE for Dummies* is a derivative work, prohibited by Section 106(2) of the Copyright Act.  *See Greenberg v. Nat'l Geographic Soc'y,* 244 F.3d 1267, 1274 (11th Cir. 2001)(discussing derivative works). Nevertheless, defendant contends that it is entitled to summary judgment on plaintiff's copyright infringement claim based on: 1) the idea/expression dichotomy; 2) the merger doctrine; and 3) the fair use defense. (Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s

16

Br.") [48] at 2-14.)  Defendant's arguments are not persuasive.

### 1.   The Idea/Expression Dichotomy

"The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas.'" *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 344-45 (1991) (quoting *Harper & Row Publishers, Inc. v. Nation Enter.,* 471 U.S. 539, 556 (1985)). Codifying this long standing principle, section 102(b) of the Copyright Act provides:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b).  Pursuant to Section 102(b),"[i]deas are substantively ineligible for copyright protection and, therefore, are categorically excluded from the subject matter of copyright." *Dunlap v. G&L Holding Group Inc.,* 381 F.3d 1285, 1297 (11th Cir. 2004).

Thus, while "the expression of an idea is copyrightable, . . . the underlying idea is not." *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F.Supp. 614, 621 (N.D. Ga. 1993).

Defendant argues that *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* incorporate only the ideas underlying the SCQuARE concept, and that the works accordingly do not infringe plaintiff's copyright in the SCQuARE Manual. (Def.'s Br. [48] at 2-6.)  The

17

Court does not agree.

The SCQuARE Manual describes the SCQuARE concept, a method for identifying and analyzing business problems. (Pl.'s Mot. for Summ. J. [67] at Ex. 1.) Applying the idea/expression dichotomy to the SCQuARE Manual, plaintiff's copyright does not prohibit the communication or use of the problem-solving method that the manual describes. *See Palmer v. Braun,* 287 F.3d 1325, (11th Cir. 2002)(applying the idea/expression dichotomy to a similar case involving a personal consciousness raising program). However, it does prohibit copying plaintiff's particular expression of that method. *Id.* Thus, defendant can legitimately apply the SCQuARE method to its business problems, but cannot copy and disseminate plaintiff's expression of that method as embodied in the copyrighted SCQuARE Manual. *Id.*

It is often difficult to draw the line between an idea and its expression. *Palmer,* 287 F.3d at 1330. *See also, Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 460 (11th Cir. 1994) (noting the "practical difficulty of drawing a bright line between idea and expression") (citing *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960) (L. Hand, J.)). In this case, however, there is substantial evidence that defendant crossed that line. *SCQuARE for Dummies* includes verbatim quotes and original graphics and templates copied directly from the SCQuARE manual.

18

(Pl.'s Mot. for Summ. J. [67] at Exs. 1 and 13.)  *SCQuARE and the Continuous Promise* makes less direct use of the SCQuARE Manual, but also includes a number of verbatim quotes and at least one exact replica of a graphic that appears in the SCQuARE Manual.  (*Id.* at Exs. 1 and 16.)  The record suggests that *SCQuARE for Dummies*, and to a lesser extent *SCQuARE and the Continuous Promise*, go beyond simply communicating and using the ideas underlying the SCQuARE method.

### 2.   **The Merger Doctrine**

In a related argument, defendant contends that the "merger doctrine" mandates summary judgment on plaintiff's copyright infringement claim.  (Def.'s Br. [48] at 4-5.)  Under the merger doctrine, "'expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.'"  *Dunlap*, 381 F.3d at 1295 (quoting *Bellsouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc.,* 999 F.2d 1436, 1442 (11th Cir. 1993)).  Defendant has not shown that the SCQuARE concept meets this definition.  Indeed, defendant's employee Jeff Upshaw admitted that there are ways to convey the ideas underlying the SCQuARE concept without copying, verbatim, essential language and original graphics from the SCQuARE Manual.  (Upshaw Dep. at 40-41.)

Defendant focuses much of its argument on its use of the SCQuARE mnemonic.  (Def.'s Br. [48] at 2-6; Def.'s Resp. [73] at 10-17.)

19

Defendant argues that plaintiff cannot prevent it from using the SCQuARE mnemonic to convey the SCQuARE concept to others. (*Id.*) Assuming defendant is correct, *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* go far beyond displaying and defining the SCQuARE mnemonic. As noted, both works directly quote significant portions of the SCQuARE manual, including text, graphics, and templates. (Pl.'s Mot. for Summ. J. [67] at Exs. 1, 13, and 16.) Defendant has not shown that the exact language and graphics used in the SCQuARE Manual is necessary to convey the unprotectable ideas underlying the SCQuARE concept.

The SCQuARE Manual includes such topics as "The Five Stage Thinking Process" and "Strategic Thinking." (Pl.'s Mot. for Summ. J. [67] at Ex. 1.) It offers a number of problem-solving insights and techniques, such as: "Everything in the thinking process must be directed towards identifying—and eventually satisfying—the Pivotal Question. It is the distillation of your analysis and the axis of the thinking process and your proposition." (*Id.*) There is nothing about these ideas that inherently limits their manner of expression. Indeed, many of the underlying ideas in the SCQuARE Manual can (and have been) "expressed in various different ways." *Infodek,* 830 F.Supp. at 623 (explaining that to resolve merger question, the Court must consider "whether there are various means available to achieve the [work's] desired purpose or function").

20

In short, defendant has not demonstrated that using verbatim excerpts from the SCQuARE Manual is the only way to express the ideas and concepts embodied in the Manual.  Record evidence and common sense suggest otherwise.  Accordingly, defendant is not entitled to summary judgment on plaintiff's copyright infringement claim on the basis of the merger doctrine.

### 3.   **The Fair Use Defense**

Finally, defendant invokes the "fair use" defense in support of its motion for summary judgment on plaintiff's copyright infringement claim.  Section 107 of the Copyright Act provides that:

> the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

17 U.S.C. § 107.  Section 107 specifies four factors the Court should consider in determining whether a defendant's use of a copyrighted work is fair, including:

(1)   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)   the nature of the copyrighted work;

(3)   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)   the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*  In determining whether a use is fair under the Act, the Court

21

must "bear in mind that the examples of possible fair uses given are illustrative rather than exclusive, and that '[a]ll [of the four factors] are to be explored, and the results weighed together in light of the purposes of copyright." *Suntrust Bank,* 268 F.3d at 1268 (quoting *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577-78 (1994)). Considering the statutory factors, and the general purposes of copyright law, defendant has not demonstrated that its use of the SCQuARE Manual was "fair."

### a)    Purpose and Character of the Work

"The first factor in the fair-use analysis, the purpose and character of an allegedly infringing work, has several facets." *Suntrust Bank,* 268 F.3d at 1269. The first is whether the work "serves a commercial purpose or nonprofit educational purpose." *Id.* "The fact that a publication [i]s commercial as opposed to nonprofit" weighs against a finding of fair use. *Harper & Row Publishers, Inc. v. Nation Enter.,* 471 U.S. 539, 562 (1985). As the Supreme Court stated in *Harper & Row,* "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row,* 471 U.S. at 562. Under this definition, defendant's works were unquestionably created for "commercial purposes." (*See* Def.'s Br. [48] at 10.) The "for-profit status" of defendant's works weighs

22

against a finding of fair use.  *Suntrust Bank,* 268 F.3d at 1269.

Another consideration relevant to the purpose and character analysis is the extent to which defendant's use of the copyrighted elements of the SCQuARE Manual is "transformative."  *Id.*  A work is "transformative" when it "adds something new, with a further purpose or different character, altering the first [work] with new expression, meaning or message."  *Id.*  "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."  *Id.* (quoting *Campbell,* 510 U.S. at 579)).  *See also, Pac. & S. Co., Inc. v. Duncan,* 744 F.2d 1490, 1496 (11th Cir. 1984)(noting that the distinction between creative and non-creative uses can be helpful in calibrating the balance in the fair use analysis).  In some cases, the transformative nature of a work overshadows and outweighs its commercial purpose.  This is particularly true in the realm of parody, as "a parody's aim is, by nature, to transform an earlier work."  *Suntrust Bank,* 268 F.3d at 1269. (holding that the transformative nature of *The Wind Done Gone,* a parody of *Gone With the Wind,* outweighed its commercial purpose).  *See also, Campbell,* 510 U.S. at 579 (recognizing that "parody has an obvious claim to transformative value").

The works at issue in this case are not remotely transformative. *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise* do not

23

comment or build upon plaintiff's expression in the SCQuARE Manual; they quote plaintiff's expression directly, albeit in a highly condensed format.   (Pl.'s Mot. [67] at Exs. 1, 13, and 16.) Moreover, because they are a type of abridgement, defendant's works present the distinct possibility of supplanting plaintiff's copyrighted work in the marketplace, despite defendant's argument that neither of its works is intended to compete with the SCQuARE Manual.   These facts further weigh against a finding of fair use.

### b.    Nature of the Copyrighted Work

"The second factor, the nature of the copyrighted work, recognizes that there is a hierarchy of copyright protection in which original, creative works are afforded greater protection than derivative works or factual compilations." *Suntrust Bank,* 268 F.3d at 1271.   The SCQuARE Manual is neither a derivative work nor a factual compilation.   Defendant concedes that the Manual "contains some creative elements."   (Def.'s Br. [48] at 12.)   This factor therefore weighs against a finding of fair use.

### c.    Amount and Substantiality of the Portion Used

The third fair use factor is the "'amount and substantiality of the portion used in relation to the copyrighted work as a whole.'" *Suntrust Bank,* 268 F.3d at 1271.   In analyzing the amount and substantiality factor, the Court must consider "not only . . . the quantity of the materials used, but  . . .  their quality and

24

AO 72A
(Rev.8/82)

importance, too." *Campbell,* 510 U.S. at 1175. *See also, Harper &*
*Row,* 571 U.S. at 564-66.

Defendant insists that it only used the SCQuARE mnemonic and
plaintiff's explanation of the letters contained in the mnemonic.
(Def.'s Br. [48] at 13.)  This is not an accurate representation of
the record. *SCQuARE for Dummies* and *SCQuARE and the Continuous*
*Promise* contain, in addition to the mnemonic and its explanation,
verbatim quotes and exact replicas of graphics taken directly from
the SCQuARE Manual. (Pl.'s Mot. [67] at Exs. 1, 13, and 16.)

Nevertheless, the amount and substantiality factor does not
clearly favor either party in this case.  Defendant's quantitative
takings are relatively small--*SCQuARE for Dummies* contains much less
material than the copyrighted SCQuARE Manual, and *SCQuARE and the*
*Continuous Promise* is even less inclusive. (Pl.'s Mot. [67] at Exs.
1, 13, and 16.)  Both works are designed to be presented in
approximately half an hour, as opposed to the 24 to 26 hour training
required to present the material in the SCQuARE Manual. (DSMF [48]
at ¶¶ 12, 27, 29.)  On the other hand, *SCQuARE for Dummies*, and to a
lesser extent *SCQuARE and the Continuous Promise*, incorporate, and
were intended to convey, the very essence of the SCQuARE Manual.
(*Id.*; Pl.'s Mot. [67] at Exs. 13 and 16.)  Thus, defendant's
qualitative takings are arguably significant. *See Harper & Row,* 471
U.S. at 565-66 (recognizing that "the fact that a substantial portion

25

of the infringing work was copied verbatim is evidence of the qualitative value of the copied material"), and *Cable/Home Commc'n Corp. v. Network Prod., Inc.,* 902 F.2d 829, 844 (11th Cir. 1990)(stating that "a small degree of taking is sufficient to transgress fair use if the copying is the essential part of the copyrighted work").[5]

### d.   Effect on the Market Value of the Original

The final fair use factor is the effect that defendant's works will have on the market for or value of plaintiff's copyright in the SCQuARE Manual. *Suntrust Bank,* 268 F.3d at 1274. In addressing this factor, the Court must "'consider not only the extent of harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant [] would result in a substantially adverse impact on the potential market.'" *Id.* (quoting *Campbell,* 510 U.S. at 590). The transformative nature of a work is also relevant to the market effect analysis because "'[w]hereas a work that merely supplants or supersedes another is likely to cause a substantially adverse impact

---

[5] Moreover, SCQuARE for Dummies may ultimately be found to be a derivative work. *See Twin Peaks Prod., Inc.,* 996 F.2d at 1375 (defining an abridgement or condensation of a larger work as a "derivative work"). The Copyright Act gives the copyright holder the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2).

on the potential market of the original, a transformative work is less likely to do so.'" *Id.* at n. 28 (quoting *Sony Computer Entm't., Inc. v. Connectix Corp.,* 203 F.3d 596, 607 (9th Cir. 2000)).

As discussed, *SCQuARE for Dummies* does not transform or build upon, but merely supplants, the SCQuARE Manual. "[A] work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original." *Campbell,* 510 U.S. at 587-88. Unrestricted and widespread dissemination of defendant's condensed version of the SCQuARE Manual would undoubtedly impair the marketability of plaintiff's training program, which is expensive and lengthy.[6] *Compare id.* at 1178 (noting that a parody is unlikely to act as a substitute for an original work because the two works "usually serve different market functions"). The market effect factor thus weighs against a finding of fair use. *See Pac. & S. Co., Inc.,* 744 F.2d at 1496 (stressing that "Section 107 looks to the 'potential market' in analyzing the effects of an alleged infringement"). Considering all the relevant factors, defendant has not demonstrated that its use of the SCQuARE Manual was "fair,"

---

[6] Contrary to defendant's suggestion, plaintiff is not required to produce evidence of actual loss of revenue as a result of defendant's infringement. (Def.'s Br. [48] at 14.) As the Supreme Court stated in *Harper & Row,* "[r]arely will a case of copyright infringement present such clear-cut evidence of actual damage." *Harper & Row,* 471 U.S. at 567.

as defined by Section 107 of the Copyright Act.   Neither has defendant shown that its use serves any more general purpose of copyright law.   Accordingly, defendant is not entitled to summary judgment on plaintiff's copyright infringement claim on the basis of the fair use defense.

As defendant has not demonstrated any basis for granting its motion for summary judgment on plaintiff's copyright infringement claim, the motion is **DENIED**.

### B.   Trademark Infringement

Plaintiff has asserted a claim for common law trademark infringement under Georgia law. (Compl. [1] at ¶¶ 38-45.) Plaintiff argues that defendant infringed its rights in the trade name "SCQuARE" by creating and distributing *SCQuARE for Dummies*, and using the SCQuARE name in internal training sessions.   (*Id.* at ¶¶ 41-42.) Defendant contends that it is entitled to summary judgment on plaintiff's trademark infringement claim because plaintiff has not registered "SCQuARE" as a trademark. (Def.'s Br. [48] at 15.)   This argument is unpersuasive.

Georgia law "protects trade names by statute and by common law." *Diedrich v. Miller & Meier Assoc., Architects and Planners, Inc.,* 254 Ga. 734, 736, 334 S.E. 2d 308, 310-11 (1985).   Plaintiff's claim is for common law infringement.   (Compl. [1] at ¶ 45.)   The claim is thus excepted from the registration requirement of Georgia's

AO 72A
(Rev.8/82)

trademark infringement statute, which provides:   "Nothing in this [statute] shall adversely affect the rights or the enforcement of rights in trademarks or service marks acquired . . . at common law." O.C.G.A. § 10-1-452; *Diedrich,* 254 Ga. at 736, 334 S.E. 2d at 311 (finding that the Act "expressly preserves common law" trademark rights).

Defendant also argues that it is entitled to summary judgment because plaintiff has not produced evidence of actual consumer confusion.   (Def.'s Br. [48] at 16.)   In order to prevail on its trademark infringement claim, plaintiff must demonstrate that defendant used a mark or name "that was the same or confusingly similar to plaintiff's mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001). *See also, Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F.2d 1018, 1024 (11th Cir. 1989)(applying common law trademark principles, and stating that "an infringement action is based on the likelihood of consumer confusion"). "Although evidence of actual confusion is obviously the best evidence of a likelihood of confusion, it is not necessary to a finding of likelihood of confusion." *Ackerman Sec. Sys., Inc. v. Design Sec. Sys., Inc.,* 201 Ga. App. 805, 806, 412 S.E. 2d 588, 589 (1991).   To determine whether there is a likelihood of confusion, the Court must consider not only evidence of actual confusion, but several other

29

factors, including:

> the strength or distinctiveness of the trademark at
> issue; similarity or overall impression created by the
> designs; similarity of product; identity of retail
> outlets and purchasers; identity of advertising media
> used; defendant's intent; and actual confusion.

*Id.* (citing *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259
(5th Cir. 1980)).

Plaintiff has produced sufficient evidence on these factors to
raise a question of fact on its trademark infringement claim.
Although the SCQuARE mnemonic has some relationship to the SCQuARE
product, the mark is at least suggestive. *See John H. Harland Co. v.
Clarke Checks, Inc.,* 711 F.2d 966, 974 (11th Cir. 1983)(explaining
that a suggestive mark "suggests some characteristic of the product
or service to which it is applied, but requires the consumer to use
his imagination to determine the nature of the product or service").
It is undisputed that defendant used the same exact mark, and applied
it to a similar product, the *SCQuARE for Dummies* manual and other
training materials. (DSMF [48] at ¶¶ 25-27.) The evidence on the
remaining factors is in dispute.

The Court agrees with defendant that it may ultimately be
difficult for plaintiff to show that any recipient of the *SCQuARE for
Dummies* manual was confused as to its creator, as the manual was only
distributed internally, to defendant's own employees. (*See* Def.'s
Br. [48] at 16.) The relevant factors do not so clearly favor

30

defendant, however, that no reasonable jury could find a likelihood of confusion.  Accordingly, defendant's motion for summary judgment on plaintiff's trademark infringement claim is **DENIED.**

C.    **Unfair Competition**

Defendant asserts a similar argument in support of its motion for summary judgment on plaintiff's unfair competition claim.  "[I]n Georgia, the term unfair competition is a nomenclature for the doctrine that one cannot pass off his goods as those of another." *Nationwide Adver. Serv., Inc. v. Thompson Recruitment Adver., Inc.,* 183 Ga. App. 678, 682, 359 S.E. 2d 737, 741 (1987) (citing *Hayes v. Hallmark Apts.,* 232 Ga. 307, 207 S.E. 2d 197 (1974)).  Thus, the law of unfair competition prohibits "passing off, or attempting to pass off, on the public, the goods or business of one person as and for the goods or business of another." *Atlanta Paper Co. v. Jacksonville Paper Co.,* 184 Ga. 205, 212-13, 190 S.E. 777, 782 (1937).  Plaintiff claims that defendant engaged in unfair competition by creating and distributing *SCQuARE for Dummies* and other training materials containing the SCQuARE name.  (Compl. [1] at ¶¶ 47-49.)  Defendant contends that it is entitled to summary judgment because it only distributed the SCQuARE materials internally, to its own employees, and not to the "public."  (Def.'s Br. [48] at 17.)

Like plaintiff's trademark infringement claim, plaintiff's claim for unfair competition involves questions of consumer confusion,

31

specifically, confusion as to the origin of *SCQuARE for Dummies* and other materials defendant distributed bearing the SCQuARE name. *See Nationwide Adver. Serv.,* 183 Ga. App. at 682, 359 S.E. 2d at 741 (inquiring whether there was "confus[ion] as to the source" of advertisement claimed to constitute unfair competition). As mentioned above, it may be difficult for plaintiff to demonstrate that defendant's own employees were confused as to the source of *SCQuARE for Dummies*, or that they were under the false impression that the materials originated from plaintiff. Nevertheless, the Court agrees with plaintiff that defendant's employees are not "strip[ped] . . . of their status as members of the public" by virtue of their employment with defendant. *Huthwaite, Inc. v. Sunrise Assisted Living, Inc.,* 261 F.Supp. 2d 502, 514 (E.D. Va. 2003)(citing *In re Canadian Pac. Ltd.,* 754 F.2d 992, 995 (Fed. Cir. 1985)). In fact, defendant's employees are the very members of the public that comprise the target market for plaintiff's services. Defendant has not shown that these employees, as a matter of law, were not likely to be confused as to source of the SCQuARE materials that defendant distributed. Accordingly, defendant's motion for summary judgment on plaintiff's unfair competition claim is **DENIED**.

### D.   Violations of the Deceptive Trade Practices Act

Like the unfair competition doctrine, Georgia's Deceptive Trade Practices Act essentially prohibits "passing off" one's goods as

32

those of another.   *See* O.C.G.A. § 10-1-372.   The Act provides, in
relevant part:

> (a)   A person engages in a deceptive trade practice
>       when, in the course of his business, vocation, or
>       occupation, he:
>
>> (1)   Passes off goods or services as those of
>>       another; [or]
>>
>> (2)   Causes likelihood of confusion or of
>>       misunderstanding as to the source,
>>       sponsorship, approval, or certification
>>       of goods or services.

*Id.*   In support of its motion for summary judgment on this claim,
defendant again cites the lack of evidence of actual confusion on the
part of "any member of the public."   (Def.'s Br. [48] at 17.)

As discussed, defendant's employees who received the *SCQuARE for
Dummies* manual and other SCQuARE training materials created by
defendant qualify as "member[s] of the public."   *Huthwaite, Inc.,* 261
F.Supp. 2d at 514.   Moreover, the Deceptive Trade Practices Act
specifically provides that "a complainant need not prove . . . actual
confusion" to prevail on a claim under the Act.   O.C.G.A. § 10-1-
372(b).   That defendant did not widely distribute the SCQuARE
materials it created will certainly make it more difficult for
plaintiff to prove "passing off" or a "likelihood of confusion" as to
the source of the materials.   However, the limited distribution does
not foreclose plaintiff's Deceptive Trade Practices claim altogether.
Accordingly, defendant's motion for summary judgment on plaintiff's

claim for violations of the Deceptive Trade Practices Act is **DENIED**.

### E.   Breach of Contract

As discussed, the undisputed facts in the record demonstrate that defendant breached the parties' contract.  The Court has granted summary judgment to plaintiff on its breach of contract claim. Accordingly, defendant's motion for summary judgment on the breach of contract claim is **DENIED**.

### F.   Violations of the Computer Systems Protection Act

Plaintiff has asserted a claim under the Georgia Computer Systems Protection Act.  (Compl. [1] at ¶¶ 63-66.)  Defendant contends that it is entitled to summary judgment on this claim, because the Computer Systems Protection Act is an identity theft/anti-spam law, which does not encompass plaintiff's allegations in this case.  (Def.'s Br. [48] at 21.)  Although the Computer Systems Protection Act casts a wider net than defendant suggests, the Court agrees with defendant that it is not broad enough to cover the actions plaintiff alleges in this case.

The Georgia Legislature passed the Computer Systems Protection Act to address the "growing problem" of "computer related crime" and to aid "the prosecution of persons engaged in computer related crime."  O.C.G.A. § 16-9-91.  To that end, the Act enumerates and defines a number of computer-related crimes, such as computer theft, computer trespass, computer invasion of privacy, and computer

34

forgery.   O.C.G.A.   §   16-9-93.   The   only   arguably   applicable

provisions of the Act are Section 16-9-93(a), prohibiting "computer

theft," and Section 16-9-93.1, prohibiting "misleading transmittal"

of data over the internet.  Upon a close reading of both provisions,

it is clear that neither section addresses plaintiff's allegations in

this case.

Section 16-9-93(a) provides that a person is guilty of "computer

theft" if he:

(a)   uses a computer or computer network with knowledge
      that such use is without authority and with the
      intention of:

      (1)   Taking   or   appropriating   any   property   of
            another, whether or not with the intention of
            depriving the owner of possession . . .

O.C.G.A.   §   16-9-93(a).   Although   there   is   a   question   whether

defendant appropriated plaintiff's intellectual property, there is no

allegation that the appropriation was achieved by the *unauthorized*

use of a computer.  Section 16-9-93(a) is thus inapplicable.

The   language   of   Section   16-9-93.1   is   somewhat   convoluted.

Generally, Section 16-9-93.1 prohibits misleading transmittals and

use of trade name or copyrighted symbol over a computer or telephone

network.  *See* O.C.G.A. § 16-9-93.1.  As is relevant to this case,

Section 16-9-93.1 makes it illegal for an organization to use a

trademark   or   copyrighted   symbol   on   the   internet,   without   the

permission of the trademark or copyright owner, for the purpose of

35

falsely identifying itself.  O.C.G.A. § 16-9-93.1.  Although there is a question of fact whether defendant used plaintiff's trademark and copyrighted symbol in an unauthorized manner, plaintiff has not alleged that defendant used the SCQuARE name on the internet for the purpose of "falsely identifying itself."  Section 16-9-93.1 is thus also inapplicable to this case.

Plaintiff contends that defendant used a computer to create and present *SCQuARE for Dummies* and *SCQuARE and the Continuous Promise*, and that on one occasion Richard Bell e-mailed the SCQuARE materials to defendant.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. [51] at 21-22.)  Assuming these facts are true, defendant has not engaged in "computer theft" as defined by Section 16-9-93(a), or "misleading transmittals" as defined by Section 16-9-93.1.  *Compare Automated Drawing Sys., Inc. v. Integrated Network Serv., Inc.,* 214 Ga. App. 122, 447 S.E.2d 109 (1994)(applying Computer Systems Protection Act where defendant copied and duplicated plaintiff's source code, then created and sold its own software derived from plaintiff's program).  Accordingly, defendant's motion for summary judgment on plaintiff's claim under the Computer Systems Protection Act is **GRANTED.**

### G.    Punitive Damages

Defendant concedes that punitive damages are available under Georgia law for plaintiff's unfair competition claim.  (Def.'s Br. [48] at 22.)  Georgia's standard for granting punitive damages,

36

however, is high.  *See* O.C.G.A. § 51-12-5.1(b).  Pursuant to Section 51-12-5.1, punitive damages may only be awarded where "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences."  *Id.*  The record contains very little evidence of such conduct, and the Court agrees with defendant that plaintiff's claim for punitive damages is not strong.

Nevertheless, "[w]hether a defendant's actions are wilful, wanton or malicious so as to sustain a claim for punitive damages is ordinarily an issue for consideration by a jury."  *Christopher Inv. Prop., Inc. v. Cox,* 219 Ga. App. 440, 444, 465 S.E.2d 680, 684 (1995), overruled on other grounds by *Amend v. 485 Prop.,* 280 Ga. 327, 627 S.E. 2d 565 (2006).  *See also, Tyler v. Lincoln,* 272 Ga. 118, 527 S.E. 2d (2000)(reversing trial court's grant of summary judgment to defendant on punitive damages).  There is evidence in this case that defendant misappropriated plaintiff's intellectual property.  In such cases, the question of punitive damages is most appropriately resolved by the factfinder.  *See Salsbury Lab., Inc. v. Merieux Lab., Inc.,* 735 F.Supp. 1555, 1574 (M.D. Ga. 1989)(applying Georgia law and awarding punitive damages in a case involving misappropriation of trade secrets).  Accordingly, defendant's motion for summary judgment on plaintiff's claim for punitive damages is

37

DENIED.

### H.   Statutory Damages and Attorney's Fees under the Copyright Act

In its motion for summary judgment and its previous motion to dismiss, defendant argued that plaintiff's claim for statutory damages, costs, and attorney's fees under the Copyright Act should be dismissed because plaintiff had not registered its copyright at the time of the alleged infringement.  (Def.'s Br. [48] at 24.)   *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1493 (11th Cir. 1990)("No attorneys' fees or statutory damages were available to [plaintiff] under the Copyright Act because the [copyrighted] materials were not registered with the Copyright Office at the time the alleged infringement occurred.").   Plaintiff has failed to respond to defendant's argument.  (*See generally*, Pl.'s Br. [51].) Accordingly, defendant's motion for summary judgment on plaintiff's claim for statutory damages, costs, and attorney's fees under the Copyright Act is **GRANTED**.

### I.   Bad Faith Attorney's Fees under O.C.G.A. § 13-6-11

Finally, plaintiff claims that it is entitled to attorney's fees under O.C.G.A. § 13-6-11.   Section 13-6-11 permits an award of attorney's fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  O.C.G.A. § 13-6-11.   "'Bad faith warranting an award

38

of attorney fees must have arisen out of the transaction on which the cause of action is predicated,'" as opposed to the resulting litigation. *Wheat Enter., Inc. v. Redi-Floors, Inc.,* 231 Ga. App. 853, 857, 501 S.E. 2d 30, 35 (1998).

Like its claim for punitive damages, plaintiff's claim for litigation expenses under Section 13-6-11 is most appropriately resolved by the factfinder. *Id. See also, Am. Med. Transp. Group, Inc. v. Glo-An, Inc.,* 235 Ga. App. 464, 509 S.E. 2d 738, (1998) ("[Q]uestions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense under O.C.G.A. § 13-6-11, are generally questions for the jury to decide."). Construing the facts in favor of plaintiff, there is some evidence to support its claim that defendant acted with bad faith in breaching the parties' agreement, and misappropriating plaintiff's intellectual property. (*See* PSMF [54] at ¶¶ 7, 11-22.)  *Id.* (stating that bad faith "may be found in defendant's carrying out the provisions of the contract, that is, in how defendant acted in his dealing with the plaintiff"). Accordingly, defendant's motion for summary judgment on plaintiff's claim for attorney's fees under O.C.G.A. § 13-6-11 is **DENIED**.

IV. **Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims**

During its initial investigation into plaintiff's claims, defendant discovered that plaintiff had listed BBDO on its website as

a representative client.  (Def.'s Resp. to Pl.'s Mot. to Dismiss or for Summ. J. ("Def.'s Resp.") [74] at 2.)  Defendant also discovered that plaintiff had prominently posted on its website the following quote from BBDO employee Chris Raper:  "SCQuARE is the most important thing I've learned since the alphabet."  (*Id.*)  The website attributed the quotation to "Chris Raper, BBDO South, USA."  (*Id.*) Defendant claims that it did not authorize either of these endorsements.  (*Id.*)

After viewing plaintiff's website, defendant demanded on three occasions that plaintiff remove BBDO's name from the site.  (Def.'s Resp. [74] at 4.)  Plaintiff, taking the position that it was authorized to use the BBDO name and quote, refused to change the website.  (*Id.*)  Defendant subsequently filed a counterclaim against plaintiff, asserting claims for false endorsement under the federal Lanham Act, false endorsement under Georgia law, and unjust enrichment.  (Counterclaim [59] at ¶¶ 22-30.)

Plaintiff has filed a motion to dismiss and a motion for summary judgment on defendant's counterclaims.  (Pl.'s Mot. to Dismiss or for Summ. J. ("Pl.'s Mot.")[68].)  Plaintiff argues that defendant's claims should be dismissed because they were not filed within the applicable statute of limitations, and are barred by the laches doctrine.  (*Id.* at 7-11, 16-18, 20.)  Alternatively, plaintiff contends that it is entitled to summary judgment because defendant

40

has not produced sufficient evidence to prevail on either claim. (*Id.* at 11-16, 18-19, 20-22.)  The Court rejects plaintiff's statute of limitations and laches argument, and finds that questions of fact preclude summary judgment on defendant's counterclaims.

### A.    Plaintiff's Statute of Limitations and Laches Defense

The parties agree that all of defendant's counterclaims are subject to a four-year statute of limitations.  (Pl.'s Br. [68] at 7; Def.'s Resp. [74] at 5.)  *See* O.C.G.A. § 9-3-31 (imposing a four-year limitations period on claims for false endorsement under Georgia law); *Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1205 (11th Cir. 1997)(applying the four-year limitations period of O.C.G.A. § 9-3-31 to an analogous false endorsement claim under the Lanham Act); and *Burns v. Dees,* 252 Ga. App. 598, 608, 557 S.E. 2d 32, 39 (2001)(applying the four-year limitations period of O.C.G.A. § 9-3-26 to bar plaintiff's unjust enrichment claim). However, the parties dispute when the four-year period applicable to defendant's claims began to run.  Plaintiff argues that the limitations period began to run when plaintiff first displayed the Raper quote and BBDO name on its website in April, 2000, thus barring defendant's claim.  (Pl.'s Br. [68] at 8.)  The Court does not agree.

The limitations period of O.C.G.A. § 9-3-31 begins to run when a cause of action "accrues."  O.C.G.A. § 9-3-31.  A cause of action accrues, for purposes of the statute, at the time of the injury.

41

*Hanna v. McWilliams,* 213 Ga. App. 648, 651, 446 S.E. 2d 741, 744 (1994). Although plaintiff initially posted the Raper quote and BBDO name on its website in 2000, the material remained on the site until May or June 2005. (Def.'s Resp. [74] at 5.)  The resulting injury, in this case the untruthful suggestion that BBDO endorsed SCQuARE, arguably continued to occur as long as plaintiff's website displayed the false endorsement, up to and including May or June 2005, when plaintiff finally removed the material. *See Cleveland Lumber Co. v. Proctor & Schwartz, Inc.,* 397 F.Supp. 1088, 1093 (N.D. Ga. 1975)(applying Georgia law, stating that "the statute of limitations runs from the happening of *any* given injury") (emphasis added).

Moreover, assuming that plaintiff's version of the facts is true, defendant did not have an actionable counterclaim until at least June of 2004. Defendant's counterclaim is based on federal and state laws prohibiting *unauthorized* endorsements. *See* 15 U.S.C. § 1125(a)(1)(A) and O.C.G.A. § 10-1-372(a).  Plaintiff claims that defendant authorized plaintiff's use of the Raper quote and the BBDO name in April, 2000. (See Pl.'s Br. [68] at 13.)  It is undisputed, however, that defendant withdrew its authorization when it demanded that plaintiff remove the Raper quote and the BBDO name from its website in June, July, and December of 2004. (Def.'s Resp. to PSMF [74] at ¶¶ 6-7.)  Crediting plaintiff's factual assertions, defendant's claims did not arise until June, 2004, when plaintiff's

42

use of the material first became unauthorized.  *See Limoli v. First Georgia Bank,* 147 Ga. App. 755, 756-57, 250 S.E. 2d 155, 156 (1978)("The statute of limitations begins to run on a cause of action on the date that suit on the claim can first be successfully maintained.").   Defendant filed its counterclaim within a year of this date, well within the limitations period.

Plaintiff's laches defense fails for the same reason.   Assuming that plaintiff's use of the Raper quote and BBDO name was initially authorized, defendant's claims did not arise until June, 2004.   *See Kason,* 120 F.3d at 1206 ("delay is to be measured from the time at which the plaintiff knows or should know she has a provable claim").  The allegedly unauthorized material remained on plaintiff's website until May or June of 2005.   (Def.'s Resp. to PSMF [74] at ¶ 10.) Defendant filed its counterclaim within a month of plaintiff's removal of the material from its website, and within a year of its definitive withdrawal of any authorization on the part of plaintiff to use the material.  (Counterclaim [59].)  Plaintiff has thus failed to  show an "inexcusable delay" by defendant in asserting its claims. *Id.,* 120 F.3d at 1203 (noting that, to prevail on a laches defense, it is necessary to show an inexcusable delay in asserting a claim).

Defendant   first   became   aware   of   plaintiff's   allegedly unauthorized use of the Raper quote and BBDO name in March of 2004, after plaintiff filed its Complaint.  (Def.'s Resp. to PSMF [74] at

43

¶ 6.)   Although defendant demanded that plaintiff remove the material

from its website in June, July, and December, 2004, plaintiff refused

to do so.   (*Id.* at ¶¶ 6-7.)   The unauthorized material remained on

plaintiff's website until May or June of 2005.   (*Id.* at ¶ 10.)

Defendant filed its counterclaim within a year of June, 2004, and

within a month of June, 2005.   (Counterclaim [59].)   Accordingly,

plaintiff's motion to dismiss the counterclaim on statute of

limitations and laches grounds is **DENIED.**

### B.   Defendant's False Endorsement Claims

Plaintiff contends, in the alternative, that it is entitled to

summary judgment on the merits of defendant's false endorsement

claims, both under the Lanham Act and under Georgia law.   (Pl.'s Br.

[68] at 12-15, 18-20.)   Section 43(a) of the Lanham Act prohibits the

use of any false or misleading representation of fact that:

> is likely to cause confusion, or to cause mistake, or to
> deceive as to the affiliation, connection, or association
> of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services,
> or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).   This provision establishes a cause of

action for "false association" or "false endorsement."   *L.S. Heath &*

*Son, Inc. v. AT&T Info. Sys., Inc.,* 9 F.3d 561, 575 (7th Cir. 1993);

*Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1109 (9th Cir. 1992).

Georgia's Deceptive Trade Practices Act similarly prohibits

misrepresentations concerning approval or certification of a product.

44

*See* O.C.G.A. § 10-1-372(a).

In support of its motion for summary judgment on defendant's false endorsement claims, plaintiff argues that the endorsement that appeared on its website was not false because: 1) defendant's employee Chris Raper actually made the statement quoted on the website; and 2) defendant's President Chris Hall authorized plaintiff to use the BBDO name on its website. (Pl.'s Br. [68] at 12-16.) Defendant has presented evidence that contradicts plaintiff's version of the facts. (Def.'s Resp. to PSMF [74] at ¶¶ 2-3.) As the facts are in dispute, summary judgment is not appropriate.

Plaintiff also contends that defendant's false endorsement claim fails as a matter of law because defendant has not produced evidence of consumer confusion, "in the form of consumer surveys, market research, [or] expert testimony." (Pl.'s Br. [68] at 14.) A determination that a false representation raises a likelihood of confusion is generally a question of fact, that should be submitted to the jury. *The Better Bus. Bureau of Metro. Houston, Inc. v. Med. Dir., Inc.,* 681 F.2d 397, 401 (5th Cir. 1982). In addition, there is some evidence in this case that BBDO's purported endorsement of SCQuARE on plaintiff's website, at least after June, 2004 when defendant expressly withdrew any authorization for displaying the endorsement, was "actually false," as opposed to being merely misleading. (Def.'s Resp. to PSMF [74] at ¶¶ 7-8, 10.) "Where the

45

statement in question is actually false, then the plaintiff need not show that the statement actually deceived consumers or was likely to do so." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 971 (7th Cir. 1999.)  *See also, Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002)("once a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception").

Finally, plaintiff contends that it is entitled to summary judgment because defendant has presented no evidence that BBDO and SCQuARE are "in commercial competition with each other." (Pl.'s Br. [68] at 14.)  Citing *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1109 (9th Cir. 1992), plaintiff argues that:  "A claim of false endorsement under the Lanham Act requires that the allegedly false statement be made by one in commercial competition with another." (*Id.*)  Plaintiff's argument is unpersuasive.  *Waits* expressly provides that where a false association claim is presented, as in this case, "the plaintiff need not be a competitor, for the Lanham Act also grants a cause of action to certain noncompetitors who have been injured commercially by the 'deceptive and misleading use of marks.'"  *Waits,* 978 F.2d at 1109.

Defendant has presented sufficient evidence to create a question of fact on its false endorsement claims under the Lanham Act and Georgia law.  There is evidence in the record that defendant did not

46

authorize plaintiff's use of the BBDO name and quote when plaintiff initially displayed the material on its website in April, 2000. (Def.'s Resp. to PSMF [74] at ¶¶ 2-3.)  Further, it is undisputed that defendant expressly withdrew its authorization in June, July, and December of 2004, but that plaintiff continued to display the material on its website for several months.  (*Id.* at ¶¶ 7-8, 10.) Whether plaintiff's unauthorized use of defendant's name created confusion as to defendant's sponsorship or approval of plaintiff's goods and services is a question of fact.  Accordingly, plaintiff's motion for summary judgment on defendant's false endorsement claims under state and federal law is **DENIED**.

### C.   Defendant's Unjust Enrichment Claim

Defendant has also asserted a claim against plaintiff for unjust enrichment.   (Counterclaim [59] at ¶¶ 26-30.)   According to defendant, plaintiff has "benefitted from [its] unauthorized use of the BBDO name, endorsement and the goodwill associated with that name on its website."  (*Id.* at ¶ 27.)  Unjust enrichment is an equitable doctrine that applies when a party "has been conferred a benefit . . . which [it] equitably ought to return or compensate for."  *St. Paul Mercury Ins. Co. v. Meeks,* 270 Ga. 136, 137, 508 S.E. 2d 646, 648 (1998)(quoting *Engram v. Engram,* 265 Ga. 804, 807, 463 S.E. 2d 12 (1995)).  To establish its unjust enrichment claim under Georgia law, defendant must demonstrate:   1) that it conferred a benefit on

47

plaintiff; and 2) that equity required plaintiff to compensate defendant for the benefit. *Chem-Nuclear Sys., Inc. v. Arivec Chem., Inc.,* 978 F.Supp. 1105, 1110 (N.D. Ga. 1997)(Camp, J.) (citing *Engram,* 265 Ga. 804).

Plaintiff contends that it is entitled to summary judgment on defendant's unjust enrichment claim because: 1) it did not obtain the BBDO endorsement wrongfully; and 2) defendant has not produced any evidence that the endorsement conferred a benefit on plaintiff. (Pl.'s Br. [68] at 20-22.) The Court finds that questions of fact as to each issue preclude summary judgment. As already discussed, although plaintiff claims that it requested and received permission to use the Raper quote and the BBDO name on its website, defendant disputes this fact and has presented some evidence in support of its position that plaintiff was not authorized to use the material. (Def.s Resp. to PSMF [74] at ¶¶ 2-3, 7-8, 10.) Likewise, the record contains evidence that plaintiff benefitted as a result of the allegedly unauthorized endorsement. (*Id.* at ¶ 9.) As the evidence on these issues is in dispute, plaintiff's motion for summary judgment on this claim is **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** defendant's Renewed Motion for Summary Judgment [65], **GRANTS**

48

**in part** and **DENIES in part** plaintiff's Motion for Summary Judgment on Infringement and Breach of Contract Claims [67], and **DENIES** plaintiff's Motion for Summary Judgment on Defendant's Counterclaims [68].

SO ORDERED, this _22_ day of September, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)